**IT IS SO ORDERED.**

Dated:  11:06 AM November 28 2006

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 06-51848** |
| | ) | |
| CEP HOLDINGS, LLC, et al., | ) | [Jointly Administered Case |
| | ) | Nos. 06-51847 through 06-51849] |
| DEBTOR(S) | ) | |
| | ) | CHAPTER 11 |
| | ) | |
| | ) | JUDGE MARILYN SHEA-STONUM |

### INTERIM OPINION ON DEBTORS' MOTION FOR APPROVAL OF PERFORMANCE BONUS PLAN (DKT #97)

This Court's oral opinion of October 24, 2006 approved the payments under the Debtors' performance bonus plan (the "Plan") to all but certain members of the Debtors' management team. The oral opinion denied approval of any payments to Joseph Mallak (President and CEO of CEP) and James Van Tiem (President of the Board), because these individuals were clearly insiders and the Court believed that it was not possible under Section 503(c)(3) of the United States Bankruptcy Code to find that the proposed payment amounts to these two insiders were, in the language of the Code, "justified by the facts and circumstances of the case." Of great importance to the Court's decision was a concern about the appearance of self-dealing to insiders.

The Court's oral opinion left open whether the following employees should be considered "insiders" for the purpose of the Plan: Bruce Fassett (Vice President of Sales); David Dick (Senior Vice President of Operations); Warren Knipple (Chief

Financial Officer); Robert Poynter (Vice President of Purchasing); and George Pucci (Seior Vice President of Quality & Lean) (together, the "Remaining Potential Plan Participants").

An initial question is whether any of the Remaining Potential Plan Participants constitutes "officers" of the Debtors, as that term is used in Section 101(31)(B), which defines "insiders" of a corporation to include "officers". [1] If a Remaining Potential Plan Participant is such an officer of any of the Debtors, the Court believes that person should be considered an insider pursuant to Section 503(c)(3). This was the basis of the Court's previous conclusion that it could not approve a Plan payment to Mr. Mallak.

The Debtors' Statement of Financial Affairs lists only one officer: Mr. Mallak. In response to questioning by the Court, Debtors' counsel confirmed that only Mr. Mallak had been the subject of a Director's or Managing Member's resolution of election as an officer. This leaves the question whether the inclusion of officer titles such as "Executive Vice President Customers/Sales" and "VP Purchasing" on the Plan schedules automatically confers officer status for the purpose of Section 503(c)(3).

The Court agrees with the Debtors' contention that the titles listed in the Plan's schedules are not determinative of whether an employee is an "officer" when there is apparently nothing in the company's organizational books and records electing the employee to officer status. Here the Court adopts the reasoning in *NMI Systems v. Pillard*, 179 B.R. 357 (D.C. 1995), which arose in the context not of Section 503(c) but with respect to a preferential transfer. There the debtor had designated the employee as an

> [T]he appropriate test for whether [the employee] was an officer is whether [the employee] occupied a high position within the corporation making him active in setting overall corporate policy or performing other important executive duties of such a character that it is likely that he would be accorded less than arms-length treatment in the payment of his antecedent claim against the debtor. . . . [It] includes, for example, those in the collective group exercising overall authority regarding the debtor's corporation decisions who, as members of that insider group are in a position to exert undue influence over corporation decisions regarding payment of their claims in tight financial times.

*Id.* at 369-70. *See also In re Public Access Technology*, 307 B.R. 500, 506 (E.D. Va. 2004) (stipulation that employee was an "Executive Vice President" not sufficient to find employee to be an "officer" within the meaning of 11 U.S.C. Section 101(31)(B) when

---

[1] Although Section 101(31) does not refer to Limited Liability Companies, which is the Debtor's business form, the Court considers the definition of insider to set forth in 101(31)(B), which relates to corporations, to be substantially transferable when determining insider status for Limited LiabilityCompanies. *Compare In re Die Fliedermaus LLC,* 323 B.R. 101 (Bankr. S.D.N.Y. 2005) ("[C]ontemporary insider analysis invites the Court to consider whether the disputed relationship is similar to or bears characteristics of any of the relationships specified in the statute") (*quoting In re Gilbert,* 104 B.R. 206, 210 (Bankr.D.Mo.1989).

there were not affidavits, articles of incorporation, corporate minutes, resolutions, or any other documents showing that the title made employee an officer of the corporation); *Black's Law Dictionary* 1113 (Bryan A. Garner ed. 7th ed. 1999) (defining "officer" as "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer").

The *NMI Systems* standard, which focuses on an employee's influence over the specific transaction at issue, is consistent with the Court's standard for determining whether an individual is a "person in control" of the Debtor under the Section 101(31)(B)(iii) definition of "insider". It is to that issue that the Court now turns.[2]

When the term "insider" was included in the Bankruptcy Code, the legislative history indicated that "an insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." S.Rep. No. 95-989, 95th Cong.2d Sess., reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5810. Unfortunately, this statement begs the question of *when* and *under what circumstances* the Court should find such a "sufficiently close relationship".

Because Section 503(c) was enacted as part of the Bankruptcy Abuse Protection and Consumer Protection Act of 2004 ("BAPCPA"), there are few if any opinions addressing what constitutes an "insider" for purposes of that section. Most of the opinions discussing insider status involve preferential payments to creditors under Section 547, the filing of involuntary complaints under Section 303(b)(2), and the determination whether there is an accepting class for a chapter 11 plan under Section 1129(a)(10.

The cases under Section 547 have especially informed the Court's analysis because they make it clear that what constitutes "control" will vary according to context. When the question is whether a *creditor's* influence over a debtor is so great that the creditor should be subject to the one year look-back period for payments to insiders, rather than the 90 day period for non-insider payments, the Courts have required a showing of a great degree of control. So, for example, in *Yoppolo v. Lindecamp*, 277 B.R. 740 (N.D. Ohio 2002), the Court stated that with respect to preferential payments, "an insider relationship will only be found to exist when the relationship between the transferee and the debtor was such that the transferee had the power to pressure the debtor so as to have its debt paid at the expense of a debtor's other creditors." *Id.* at 745 (*citing Damir v. Trans-Pacific National Bank*, 196 B.R. 167, 171 (N.D. Ca. 1996).

---

[2] The Court is aware that Section 101(31) states that insiders "include" the definitions set forth therein, which empowers courts to conclude that even persons not following within the specific 101(31) definitions may still be "insiders" for the purpose of the Bankruptcy Code. The Court does not, however, believe that the record in this case suggests that the Potential Plan Participants possess characteristics that should render them insiders even if the Court finds that they are not "in control" of the Debtor.

The Court believes that in the context of Section 503(c)(3), insider status under the "control" provision of Section 101(31)(B)(iii) should be determined, at least in part, by reference to the payment recipient's control of the specific transaction under consideration and the impact of that transaction upon the debtor's creditors. Phrased in terms of Section 503(c)(3), the proposed payment recipient's control over the specific transaction and its impact upon other creditors constitute "facts and circumstances" that must be considered before determining that the transaction is justified. With respect to payment programs such as the Plan, the Court believes it is important to know whether the potential plan recipient had significant input into the negotiation of the plan (including the amount of additional compensation that the employee would receive under the plan). There are other factors relevant to the determination, namely the base salary compensation of the employee and the additional responsibilities that the employee is required to undertake in order to receive the additional compensation.

The Court acknowledges that the circumstances of the supplemental evidentiary hearing on the Remaining Potential Plan Recipients were less than ideal, especially from the viewpoint of the Remaining Potential Plan Recipients, who have a contingent property interest in the Plan payments, but who were not aware either of the Court's October 24, 2006 opinion nor of the supplemental evidentiary hearing on that same date. Additionally, the Court's oral opinion, which at the Debtors' request was issued a scant two days after the initial hearing, contained little elucidation of the standards for determining whether any of the Remaining Potential Plan Recipients was an insider for the purposes of the Plan. Accordingly, the Court will reopen the record on this matter to allow the Remaining Potential Plan Recipients to obtain counsel to present evidence and arguments on their behalf under the standards set forth herein[3] as to why they should not be considered insiders for the purpose of Section 503(c)(3) and the Plan. While Debtor's counsel may participate in this hearing, the Court believes that there would at this juncture be potential conflict-of-interest issues if Debtor took the lead on the re-opened record.

Counsel for the United Steelworkers, who are the only party not to have withdrawn their objection to the Plan, shall be permitted to cross-examine witnesses in support of the Remaining Potential Plan Participants and shall further be permitted to present its own evidence. The Remaining Potential Plan Recipients shall bear the burden of proof on the issue whether the facts and circumstances of the Plan justify the proposed payments. [4]

---

[3] The Court's identification of specific factors relevant to the determination whether the proposed payments are justified is not intended as exclusive. All counsel are free at the upcoming hearing to argue that additional factors are relevant and to present evidence relating to those additional factors.

[4] With respect to the Plan's impact upon creditors, the record has established without doubt that payments made pursuant to the Plan will not lessen the amount of any recovery by creditors of the Debtors' estates. The Plan payments are being funded by the "Participating Customers", as that term has been defined in Exhibit A, Part 2 to the Debtor's cash collateral motion (Dkt. #22), and the agreement between the Participating Customers and the Debtors emphatically provides that any funds that might remain after Plan payments are to be returned to the Participating Customers. No further evidence need be introduced on this point.

A pre-hearing on this matter shall take place at the status conference scheduled in this case for December 12, 2006 at 9:30 am. A separate order setting that hearing and directing the Debtors to serve the order and this opinion in accord with the Case Management Order shall be entered in this case.

###